| | | |
|---|---|---|
| STATE OF INDIANA ) | | IN THE ALLEN SUPERIOR COURT |
| ) SS: | | |
| COUNTY OF ALLEN ) | | CAUSE NO._____ |

TIERRA SMITH, )
)
    Plaintiff, )
)
v. )
)
MULTIMATIC INDIANA, INC., )
d/b/a MULTIMATIC NEW HAVEN, )
)
    Defendant(s). )

## **COMPLAINT**

Plaintiff alleges against Defendant as follows:

1. The Plaintiff is Tierra Smith, a qualified female employee of Defendant at all times material to this Charge. Plaintiff alleges that she was discriminated and retaliated against on the basis of her sex (female) and her status as a pregnant female in violation of her federally protected rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") as amended by the Pregnancy Discrimination Act ("PDA"). Furthermore, Plaintiff alleges that she was retaliated against for using time off work pursuant to the FMLA to tend to her serious medical condition. Finally, Plaintiff alleges that her termination violated the Fair Labor Standards Act ("FLSA") as it protects women who are breastfeeding and require the ability to express breastmilk in a private place while at work.

2. The Defendant is Multimatic Indiana Inc., a company doing business at 2808 Adams Center Rd., Fort Wayne, IN 46803. Defendant is an "employer" for the purposes of Title VII, the PDA, the FLSA, and the FMLA.

3. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 27, 2021, a copy of which is attached hereto, incorporated herein, and made a part hereof as "Ex. A." The EEOC issued dismissal and Notice of Rights on March 25, 2021, a copy of which is attached hereto and made a part hereof as "Ex. B." All administrative remedies have been exhausted, and all jurisdictional requirements have been met for the filing of this lawsuit.

4. Plaintiff worked for Defendant from approximately September 6, 2017, until her wrongful termination on or about October 22, 2020.

5. In January 2020 Plaintiff notified Defendant of her pregnancy. Shortly thereafter, Plaintiff began experiencing pregnancy related illness.

6. On February 12, 2020, Plaintiff's doctor took her off work until February 24, 2020, and submitted to Defendant FMLA paperwork on February 18, 2020.

7. Plaintiff was approved for intermittent FMLA and was only able to work half days due to the difficult pregnancy. Plaintiff utilized the intermittent FMLA time available to her, until March 18, 2020, when Defendant temporarily shut down due to COVID-19 and placed employees on temporary layoff.

8. On May 26, 2020, Plaintiff was contacted by Defendant and told that the company would be resuming operations on June 1, 2020. Plaintiff indicated that she was willing to come back to work, but that she would still be utilizing the FMLA to work only half-days as

indicated by her doctor due to complications with her pregnancy. Later the same day Defendant notified Plaintiff that it had decided to keep her on temporary layoff and instructed her to continue filing her unemployment vouchers and paying for her insurance bi-weekly.

9. On August 4, 2020, Defendant notified Plaintiff that her insurance had ended on July 31, 2020, and in order to keep the insurance she would have to return to work. However, Plaintiff was within one month of her due date and only had 22 days of FMLA time available to utilize, and so Defendant notified Plaintiff they would allow her to remain on temporary unemployment. Plaintiff was able to obtain Medicaid insurance to replace the work sponsored health insurance. Defendant indicated it would let Plaintiff know when her temporary layoff would end.

10. Plaintiff gave birth on September 3, 2020.

11. On October 21, 2020 Plaintiff received a call from Richard Gross, Defendant's head of human resources, and was notified that she was being placed on permanent layoff but would be able to reapply for employment "next year." Plaintiff was in shock, and responded "okay," and the call was ended.

12. After taking a moment to process what had just happened, Plaintiff reached out to Amy Coe, in human resources, via email to ask why she was being placed on permanent layoff.

13. After no response to her email that afternoon, Plaintiff sent Ms. Coe a Facebook message asking the same question. Amy responded that she had not made that decision, but she would have Mr. Gross call her back to discuss.

14. Plaintiff then emailed Mr. Gross and told him that she was released by her doctor and able to return to work full time on October 26, 2020, and also informed him of the conversations she had previously had with Defendant regarding her temporary layoff. She indicated to Mr. Gross that her job was important to her, and she wanted to return. She also sent the same message to Mr. Gross via text message.

15. The following day, October 22, 2020, Mr. Gross called Plaintiff and told her that he had believed she had an issue with attendance, but a discussion ensued about the allegations, and after speaking to her and reviewing her file, he realized that was not the case.

16. Mr. Gross proceeded to inquire whether Plaintiff had "daycare set up for the baby," and then asked whether Plaintiff was breastfeeding. When Plaintiff responded yes, she was, Mr. Gross indicated that he did not know how accommodating her need to pump would work, and that he wanted to bring her back, but would have to "look into it." Mr. Gross further indicated that Defendant was looking to hire 60-70 people in the coming months.

17. One hour later Mr. Gross called Plaintiff back, and abruptly said that Defendant was keeping her on permanent layoff, but that she could reapply next year, and ended the call.

18. By information and belief, Plaintiff alleges that none of the other employees who were pregnant at the same time ("Pri," "Myra," and "Aheed") were permitted to return from the temporary layoff and were also summarily terminated.

19. Plaintiff contends that the initial reason alleged for her termination (attendance issues) was false and pretextual, and in reality, she was discriminated against and retaliated against on the basis of her sex (female) and for being a pregnant female, in violation of her rights under Title VII and the PDA.

20. Plaintiff also contends that Defendant retaliated against her for utilizing the FMLA. Further, in addition to discriminating against her for being a breastfeeding female, Defendant interfered with her right to breastfeed, and retaliated against her for breastfeeding in violation of her rights under the FLSA.

21. Defendant's discriminatory and retaliatory conduct was the direct and proximate cause of Plaintiff suffering the loss of her job and job-related benefits, including income, and subjected her to emotional distress, inconvenience, humiliation, and other damages and injuries. Plaintiff seeks compensatory damages, as well as reasonable attorney fees and costs.

22. Furthermore, Defendant's discriminatory and retaliatory behavior was intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, warranting an imposition of punitive damages and/or liquidated damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant for compensatory damages, punitive and/or liquidated damages, reasonable attorney fees and costs, and all other just and proper relief.

## JURY DEMAND

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**LAW OFFICE OF JENNIFER L. HITCHCOCK**

/s/ Jennifer L. Hitchcock
Jennifer L. Hitchcock, #34635-02
116 E. Berry Street, Suite 625

Fort Wayne, IN 46802
Telephone: (260) 240-4644
Facsimile: (260) 444-3441
E-mail: Jennifer@jhitchcocklaw.com
Attorney for Plaintiff

–6–